Case number 22-2932 from Nebraska United States v. Jesse Neri Mr. Howard, you may proceed. Good morning, Justices. May it please the Court, my name is Joe Howard, and I represent the appellants in this matter, Mr. Jesse Neri. We are here before the Court asking the Court to review the sentencing that was imposed upon Mr. Neri. In particular, Mr. Neri was sentenced to a term of 210 months incarceration. We are asking the Court to review what we believe are the errors made by the sentencing judge. We have assigned a number of errors, and I would like to focus in on one particular error, the request that we have made for a minor role reduction. The facts of this case are rather particular, and a review of the facts will present to the Court that Mr. Neri, in fact, did play a minor role in this matter. His brother, Oswaldo Neri, was a drug dealer. Unfortunately, the two of them had lived together in different parts of their father's house. They were stepbrothers. And Oswaldo Neri was involved in drug dealing, and one night he asked his brother, my client, Jesse, to borrow his truck. My client didn't want to let him do that, so my client went with him, unbeknownst to my client, who was a former drug dealer. So they show up at the designated spot that was articulated by Oswaldo to my client, and the officer comes up to the window and, as he does, Oswaldo hands my client a package from behind the passenger seat where my client is seated. At the same time, the officer is at the window saying, do you have the stuff? And my client simultaneously has a box put on his lap. The box is open. It's a white claw, seltzer bottle, seltzer can box, 24-pack. It's open, and inside of it is this pound of meth. And the person, as my client is sitting there with this pound of meth in his lap, the officer is at the window and says, do you have the stuff? And my client says, uh-huh, and hands it to him. So Oswaldo and Jesse are stopped shortly after that, identified by the officers, and then let go. And a search warrant was then executed on the house where they both reside. And the officers, when they executed the search warrant, found six additional pounds of methamphetamine in Oswaldo's closet. Again, they live in separate parts of the house. They're both there. My client's there with his wife and their daughter, trying to raise a little money. He's working. Oswaldo's a drug dealer. My client's not. So we're prepared for trial. We're going to trial. And my client says, you know, I'm going to take responsibility for it. Because at the end of the day, he was complicit. He saw the meth, and he handed it to the officer. Can I ask you a question? Of course, Judge. The government doesn't argue this, and so I'm going to have a conversation with the government about it. But the district court, from the sentencing hearing, says the following. Although I have overruled the defendant's objections, even if I abstained some or all of them, I would have still imposed the same sentence I'm about to pronounce based on all the factors I'm required to consider under the law. That is a prototypical harmlessness statement. Because what the district court is saying is, even if I look the other way on all these objections, I'm going to impose the same sentence under the 3553 factors. And we've got to figure out if the government has waived or forfeited that issue or whatever. But I just want to ask you, why is this not harmless? That is a clear statement, and it takes care of all of the sentencing guidelines issues, potentially. Right. So I think, like, maybe what the judge is trying to do, though, is, like, give some type of, like, prophylactic cover form. Is that essentially what you're saying? Right. I mean, he's saying basically your client is going to get the same sentence, even if all these objections go the other way. Right. But there's no basis for that, is what I'm saying. Like, so, on one hand, the judge grants my client safety now. 3553 sub F, fifth prong, says that you have to come in, you have to be, what, truthful. And so we draft up the brief, we lay everything out, and we give the brief to the court for sentencing prior to the safety valve interview. Okay. So we took the risk, and we put all the facts, according to the defendant, out there to the judge. And then we come to sentencing, and we stand on those facts, the same facts that I articulated in the brief. And what did the court do? The court granted us safety valve. And the implication there is obviously that my client was truthful. But could that be why, I mean, that we have this statement? Because the district court might be saying, you already got a break under the safety valve. I wouldn't have gone any lower than I otherwise did. And that's where the, that's where the, that's where we're arguing that this is, this is, this is a breach of discretion. You, you and I, I mean, I shouldn't speak for you. Excuse me. There's no, there's no way that this, this young man, 22-year-old guy who hands a pound of meth to a cop, should go away for 210 months. Okay. Based on these facts. And, and if we're going to believe the facts, which the court implicitly did by granting him safety valve, how is it that he is going to do 210 months? That's where I'm pulling their hair out. And I'm begging the court to reconsider this. I would like to reserve time. Mr. Peretti. Thank you. Good morning. May it please the court, Mr. Howard. My name is Christopher Peretti, Assistant U.S. Attorney. I'm representing the appellee in this case. Mr. Neary assigned multiple errors. We kind of framed it as one error, one issue case in our brief. But our argument is that there was no error in the district court's imposition of that 210-month sentence that Mr. Jesse Neary received in the case. And taking the arguments, I guess sequentially here, the first argument briefed by the appellant was that, was that of the drug weight. There was no error in holding Mr. Neary accountable for the total weight of the drugs involved in the conspiracy in this case. The district court, we look to Sentencing Guidelines Section 1B1.3A1B, where relevant conduct is defined as all acts of others within the scope of joint undertaking in furtherance of that criminal activity and reasonably foreseeable. And then case law tells us that drugs controlled by a co-conspirator are attributable to a defendant if the district court finds by a preponderance of the evidence that the transaction was in furtherance of the conspiracy and either known to the defendant or reasonably foreseeable to him. First of all, Mr. Neary pled guilty to all three counts, because there was no plea agreement here, and included in those three counts was a conspiracy charge. Why not argue harmless error here? You had to know that question was coming after what I said. I did hear that, Judge, and that is an excellent question. It should have been argued in the brief, and I noticed that in the transcript as well, that the judge did make that blanket statement. It may be too late to consider now. I don't know. I have to look at the case law on this. But I guess I would ask you this question, which is, having looked at the transcript now, would you urge us during oral argument now to look at that issue, that you think that there is actually harmless error here? Yes, I would urge the court to do that, and I would appreciate it if the court considers that as well. The safety valve issue is kind of off track, in my view at least, in terms of what issues were raised to this court. But getting back to the drug weight here, as the court knows the facts, it's not a terribly complex conspiracy here. We have the one pound involved in the transaction where Mr. Neary drove with his brother, Jesse Neary's truck. Osvaldo, his brother, was driving. Jesse handed the one pound to the undercover officer, received the proceeds for that transaction. A week later, they go back to the house. The investigators go back to the house, get in the house, and pull another six pounds out of Osvaldo Neary's bedroom closet. They live in the same residence. They also find further evidence of drug trafficking, including packaging materials. So there's not a lot more than that to it, if I'm at all candid to the court. But what the judge at the sentencing considered was the fact that he'd sat through the whole trial with the brother, so he has a bigger picture perspective than perhaps Mr. Jesse Neary had about the evidence. But he considers the fact they live in the same residence, the timing of events, the fact that this initial transaction on January 5th, 2021, that was a pretty substantial distribution quantity in and of itself, and it led to an even larger distribution quantity back at the house. At sentencing, Mr. Neary, and I think before this court, he wants to argue that this is something of a limited conspiracy, which is not a legal concept that has any merit. Either he's in or he's out. And Mr. Neary, there's no evidence that he ever went through from this conspiracy. He didn't report it to the police. He participated in that transaction on the 5th, didn't express any surprise about it. So that's how we get to reasonable foreseeability, and that's why all that weight should be considered and was properly considered. Regarding the importation enhancement, Mr. Neary did not argue that the methamphetamine recovered in this case did not come from Mexico. We filed a 28-J letter to the court to alert the court that there was new case law. This court recently addressed in U.S. v. Workmeister, in that case, a multi-defendant, which was a multi-defendant appeal. This court held that the district court did not err in imposing that two-level increase under 2D1.1.D5 for importation. As the evidence supported, the court's conclusion that the drug came from labs in Mexico. The court in that case concluded that the guideline section does not require that the defendants knew the drugs were imported. And that's what his argument is. He's saying he didn't know it. So his argument is negated. The court considered pretty clearly from the transcript, and he cited case law at sentencing, stating that he could consider evidence from Oswaldo Neary's trial, and that's what he did. And the evidence, he found that the evidence at trial was relevant and had a sufficient indicia of reliability. And that's, I think, addressing sufficiently the argument that the importation enhancement was properly applied. That that was the government's burden, and the government proved that by a preponderance at sentencing. The mitigating role argument, that's the appellant's burden in the case. The case law shows, again, there's not a lot of factual confusion here. But as much as his brother, at least, Jesse Neary, was deeply involved in the criminal activity here. And you can use just that transaction on January 5th. They take his truck out there to do this deal. Mr. Neary, the defendants, the one handing it over, those really aren't facts and evidence that he didn't know what was going on. That's argument. That was argument at sentencing, and those weren't really facts developed at sentencing that are being argued here. What was before the court was a complete trial record of Oswaldo Neary's trial, testimony from trial, and then the evidence that came in at sentencing. So the mitigating role is meant to apply to those who are plainly among the least culpable of those involved in the conduct of a group. That's from the Cartagena case. And furthermore, even if Mr. Neary, Jesse Neary, is correct to an extent that he's somewhat less culpable, he's still deeply involved in the conspiracy. And that's pursuant to U.S. v. Bush at 3.52 after 11.77. So the record is clear that the judge, he actually went through, he ticked off some of the reasons for finding that the five guideline factors set forth at 3b.1.2 in the comment applied to this case. Whatever other evidence he received and considered was insufficient to convince him otherwise. So he properly denied that request for mitigating role reduction, finding that the appellant had not proven his burden. And finally, just briefly, the court ultimately did not impose an unreasonably harsh or excessive case. It was not an abuse of discretion. The record's clear. The court engaged in a pretty extensive guidelines calculation. It was recalculated a few times. Ultimately, the court got it right. The acceptance of responsibility was factored in for minus two points. He didn't get the third point because he was coming in the day of trial to plead. And then he got, as Mr. Howard suggested, he got the minus two for safety as well. So that sentence, a within guidelines sentence, is within the range. It's presumed to be substantively reasonable. There was no procedural errors committed. The guidelines were properly calculated. It's undisputed that this methamphetamine came from Mexico. He failed to meet his burden to show that mitigating role was appropriate. And he's failed to rebut the presumption of reasonableness of his within guidelines sentence. Unless the court has any other questions, I'd ask the court to affirm the sentence. Thank you very much. In terms of the mitigating role reduction, we presented the facts to the court of what really happened. And the judge entertained us. He listened to us. He read the briefs. He found that the defendant was honest in his safety value proper and granted him the two points for that. The disconnect happens when he finds that, based on the facts as articulated in the brief, that he wasn't a minor role participant. We'd ask the justices to please look at this and see that this sentence of 210 months is excessive. It's not necessary. This court did not properly recognize the rehabilitative efforts that the defendant undertook. He did have a drug problem. He was smoking marijuana. He had pre-trial release. He took advantage of that. He got into treatment. He was fully employed. He made the most of it. He was like an ideal pre-trial release candidate. And the court didn't seem to recognize or give any reduction for that. We're asking the court also, you know, and I appreciate counsel's finding the WorkMeister case. That case obviously was not available at the time that we drafted the brief and we submitted that. And so I understand what that says. I've read through it. The only point that I would make to the court in that WorkMeister case, there were a number of co-defendants that were involved in a criminal conspiracy to distribute methamphetamine. And each had significant roles where they were transporting meth from Texas to wherever. I mean, it was more than a three-second grab of the drugs that are put in your lap and handing them to the officer. Is that significant? I think so. And what I mean by that is to add years of a sentence onto somebody because the drugs were handed in his lap or from Mexico or imported into the United States doesn't seem like a proper enhancement. He did join the conspiracy in that split second by saying, okay, and doing it and not ratting his brother out. He made some horrible decisions. I'm not saying that. And that's why he pleaded. But when people plead and they do the right thing by pleading and then they get into rehabilitation and the court recognizes and gives them credibility by giving them the 3553F5, 210 months is an abuse of discretion. It's excessive. He had a very limited role, and he manned up because he knew he did wrong and he didn't make it right. But he did afterwards by getting rehabilitation, working for his family. And I just really ask you to look at this and find that we have articulated reasons for this court to resentence this man. And I'm asking you to reduce his sentence. And with that, I would most respectfully submit. Thank you very much. Thank you, counsel. Thank you. And I was remiss earlier in not recognizing his solemn service under the Criminal Justice Act, but I want to make sure that I express the thanks of the court, Mr. Howard, for your service in this case. Thank you, sir. I appreciate that very much. The case is submitted. The court will render a decision as soon as possible. And I believe that completes our calendar for the morning. Yes, it does. Very well. Court will be in recess until further call. Thanks.